IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EARL SYLVESTER COUSINS, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. RDB-21-389 |
| FRANK B. BISHOP, *Warden*, *et al.*, | * | |
| Respondents. | *** | |

**MEMORANDUM OPINION**

In response to the above-entitled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Respondents assert the Petition should be dismissed because it is time barred. ECF 6. Pursuant to *Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002), Cousins was afforded an opportunity to explain why the Petition should not be dismissed as time-barred, and he submitted Replies to the Answer. ECF 8, 9 13.[1] After review of the pleadings filed, this Court deems a hearing in this matter unnecessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the Petition shall be DENIED as time barred and a certificate of appealability shall not issue.

**I.    Background**

---

[1] In his response, Petitioner also raises complaints regarding his visitation and medical care. ECF 8, 9, 13. If Petitioner believes his constitutional rights have been violated, he may file a separate civil rights complaint detailing those claims and naming appropriate parties. Those issues are not properly before the Court and will not be considered.

After a jury trial in the Circuit Court for Baltimore County, the Honorable Robert E. Cahill, presiding, Cousins was convicted of two counts of armed-robbery, two counts of robbery, one count of theft over $10,000, one count of armed carjacking, one count of carjacking, and one count of kidnapping. ECF 6-1 at 24. On December 6, 2016, he was sentenced to life in prison without the possibility of parole for the armed robbery; 10 years' incarceration for kidnapping; and 20 years' incarceration for armed carjacking. *Id*. at 13-21. The sentences were to run consecutive to one another and to another sentence Cousins was already serving. The remaining counts were made concurrent or merged. *Id*.

Cousins filed a timely direct appeal and his judgement of conviction and sentence were affirmed by the Maryland Court of Special Appeals in an unreported opinion. ECF 6-1 at 43-67. The court's mandate issued on November 22, 2017. *Id*. at 9. Cousins' timely petition for certiorari to the Court of Appeals of Maryland was denied on January 18, 2018. *Cousins v. State*, 457 Md. 143 (2018) (Table).

The Court of Special Appeals summarized the facts underlying Cousins' conviction as follows:

> The genesis of the instant appeal is the proceedings before a jury trial in the Circuit Court for Baltimore County on September 14 and 15, 2016. The offenses for which Cousins was tried and convicted emanate from the armed robbery of a branch of the M&T Bank on Loch Raven Boulevard on September 2, 2014 during which Cousins took over $20,000. One of the tellers identified Cousins as the robber and the State also introduced surveillance of the robber. In addition to the determination by a detective who reviewed the surveillance tape that Cousins was the robber, Cousins's handprint was found on a chair in the lobby of the Bank. In addition, the name "Earl" appeared as an entry in a sign-in book from the bank. The robber had apparently signed the book. Moreover, an informant had called the police and told them that he had planned to participate in the robbery, but had "chickened out." The informant had also told the police that Cousins was the robber.

A dye pack hidden in the cash, maintained by the bank, exploded as Cousins fled from the bank. When Cousins was arrested, he was sitting near a truck in which a large amount of cash covered in dye was found inside the glove compartment. The driver told police that Cousins had put it there. Significantly, when Cousins was arrested, he confessed to robbing the bank and a recording of his confession was played for the jury.

After he committed the robbery, Cousins walked out of the bank, entered a taxi cab driven by Papa Mbaye and sat in the front passenger seat. Mbaye had been parked in front of the bank to drop off passengers. The passengers, Katarah Perry, her daughter and her mother-in-law, were still in the back seat of the cab when Cousins boarded. Cousins asked for a ride. Mbaye testified that Cousins never offered him money, but left cash on the console of the cab. Perry testified that Cousins offered Mbaye $200 and that, although Mbaye refused, Cousins left cash on the console. Cousins also offered money to Perry, who refused it.

Cousins told Mbaye, "You need to drive. I need a ride. You need to go." When Mbaye refused, Cousins pointed a gun at him and threatened him. Mbaye proceeded to drive, at which time, Perry's mother-in-law started to pray. Cousins "repeatedly said, you know, I don't need to pray. You can stop praying. I'm not going to hurt you. I'm not going to shoot anybody. I just want a ride." He then made a comment "along the lines of I'm stealing a white man's money. I don't want to hurt anybody. I just want to get back at what's taken from me . . . ." Cousins ordered Mbaye to drive him to an intersection that was three or four miles away. The cab arrived "after a few minutes."

Cousins got out of the cab and walked away. Mbaye drove to a nearby location and called the police. Although several witnesses testified that Cousins brandished a gun during commission of the robbery and carjacking, the gun was never recovered. Mbaye, who testified that he was not familiar with guns, described it as "small" and "black." Mbaye further described the weapon as a handgun and clarified that it did not look like a revolver.

One of the bank employees also described the gun as not looking like a revolver. He described the weapon as a black "automatic" handgun that had a "clip that goes in the bottom of it." Although the employee could not visually verify that it was a real gun, he testified: "I really wasn't going to find out whether that gun was real or not . . . better to be safe than sorry." A bank teller testified that the gun "looked real," but also admitted that she didn't "know anything about guns." She could not recall specific details about the gun's appearance. Another teller, when asked whether the gun was real or fake, testified: "I wouldn't be positive on that. I'm not sure."

> Cousins told detectives, who interviewed him, that it was a "fake gun" in "[a] little holster . . . with tape around it." He added that "that motherfucker didn't work. It ain't shootin' no one [sic]." Cousins stated that it was "like a toy gun." When a detective asked if it was "a broken real gun," Cousins responded "[n]o, it was a toy gun . . . [i]t was like a toy gun." He finally added that "[i]t was basically like a blank gun, really . . . it wasn't shit. The holster made it look like a gun." One of the detectives speculated it was a real gun because, according to the Detective, when he interviews suspects, they sometimes lie about whether the gun they used in an offense was real or not. In cases where the gun is not recovered, the detective assumes that it was real.
>
> On March 25, 2015, prior to the severance of Cousins's offenses for trial, the lower court ordered a competency evaluation upon the request of Cousins's trial counsel. The doctor who evaluated Cousins stated, in a prepared report, that Cousins was competent. At the time, Cousins's counsel and the State stipulated that he was competent to stand trial.

ECF 6-1 at 44-47 (Cousins has been substituted where he was referred to as appellant in the original opinion).

On December 28, 2016, while pursuing his appeal, Cousins filed motions for modification of sentence and for sentence review by a three judge panel. ECF 6-1 at 14.  The motions were denied on January 11, 2017 and August 3, 2018, respectively. *Id*. at 11, 5.

Cousins filed a petition or post-conviction relief on July 11, 2017, which was withdrawn without prejudice by Cousins on February 21, 2018. ECF 6-1 at 11, 8.  He refiled the petition on April 3, 2018, but again withdrew the petition on September 26, 2018. *Id*. at 6, 5. No post-conviction petition has been refiled.

Cousins signed and dated his § 2254 Petition on February 3, 2021, and it is therefore deemed filed with this court as of that date. ECF 1 at 5.  *See* Rules Governing Section 2254 Proceedings in the United States District Courts, Rule 3(d) (mandating prison-mail box rule); *Houston v. Lack*, 487 U.S. 266 (1988). Cousins raises two separate grounds for relief, each relating to post-conviction challenges.     First he contends that the Circuit Court for Baltimore County

4

improperly denied his petition for writ of error coram nobis.[2] *Id*. at 3. Next, he alleges that the Circuit Court was without jurisdiction to consider a 2000 postconviction proceeding. ECF 1 at 5.

## II. Standards of Review

### A. Timeliness

Under 28 U.S.C. § 2244(d)(1), a petition for writ of habeas corpus must be filed within a one- year limitations period, which runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

This one-year period, however, is tolled while properly filed state post-conviction proceedings are pending. *Id.* § 2244(d)(2).

### B. Equitable Tolling

Under limited circumstances, the one-year limitations period for filing a habeas petition may be subject to equitable tolling. *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000);

---

[2] It appears that both the coram nobis petition and post-conviction proceedings were efforts by Cousins to vacate a 1989 *Alford* plea that served to enhance the sentence imposed in the instant case. ECF No. 1-1; *see also State v. Cousins*, Case No. 03-K-88-004881 (Cir. Ct. Balt. Co.).

*United States v. Prescott*, 221 F.3d 686, 687-88 (4th Cir. 2000). To invoke equitable tolling, a petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (citation omitted). Equitable tolling is available only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

### III. Discussion

Respondents argue that the Petition is time barred and should be dismissed because it was not filed within the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). ECF 6. Respondents further assert that Cousins is not entitled to statutory tolling pursuant to 28 U.S.C. § 2244(d)(2) or an equitable exception.

In his replies, Cousins does not assert that there was any impediment to filing his application, any newly recognized constitutional right, or any newly discovered factual predicate underlying his claims that would present a situation indicating that he timely filed his Petition within the one-year period. *See* 28 U.S.C. § 2244(d)(1)(B)(C)(D). *See generally* ECF 8, 9, 13. Cousins asserts instead that he timely filed his Petition under the provisions of 28 U.S.C. § 2244(d)(1)(A), which turns on the date judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. However, he is mistaken in his calculation of the one-year limitations period.

Cousins's judgment of conviction became final on April 19, 2018, when the time for

6

seeking review in the United States Supreme Court of the Maryland Court of Appeals' January 19, 2018 denial of certiorari review expired.  *See* U.S. Supreme Ct. Rule 13:1; *Clay v. United States*, 537 U.S. 522, 525 (2003) (holding state judgment becomes final when time expires for filing a petition for writ of certiorari to the Supreme Court or ninety days following the decision of the state's highest court).  Cousins deadline to file his federal habeas petition was one year from that date, on April 19, 2019. *See* 28 U.S.C. § 2244(d)(1)(A).

Cousins would be entitled to pause the running of the one-year limitations period only if he had properly filed an application for state post-conviction or other collateral review prior to April 19, 2019. *See* 28 U.S.C. § 2244(d)(2).  Cousins is entitled to statutory tolling during the time his postconviction proceedings were pending: from July 11, 2017 to February 21, 2018, and from April 3 to September 26, 2018. He is also entitled to statutory tolling while his motions for sentence review and modification of sentence were pending. *See Mitchell v. green*, 922 F.3d 187 (4th Cir. 2019). Those motions were pending from December 28, 2016 to August 3, 2018, when the motion for modification was denied. Statutory tolling ended on September 26, 2018, when Cousins withdrew his second post-conviction petition.  He did not refile that post-conviction petition and no other petitions were filed which could toll the limitations period. Cousins did not file the instant petition until February, 2021, over two years later.  Thus, the petition is untimely.

Cousins seemingly argues that his efforts to challenge the 1989 *Alford* plea by filing both coram nobis and post-conviction petitions challenging that conviction in 2018 and 2019 statutorily toll the limitations period regarding this conviction. ECF 1, 8, 9, 13. He is mistaken.

7

Cousins contends that the conviction and sentence in the 1989 *Alford* plea were used to enhance the sentence for the convictions he challenges here. But those collateral proceedings addressing the validity of the 1989 *Alford* plea could have only serve to statutorily toll the limitations period for that conviction. Cousins efforts to challenge other sentences and convictions cannot be used to statutorily toll the limitations period in this case.

Lastly, while Cousins did not assert an equitable tolling argument, this issue has been raised by Respondents in their memorandum of law. ECF 6 at 13-15. The Court provided Cousins with a specific opportunity to address these issues. ECF 7. In reply, Cousins argues that he is a layman without counsel to advise him regarding his filing. ECF 8, 9, 13.

Although Cousins generally states that he was ignorant of the time limitation for filing his Petition and did not have the benefit of legal assistance, this is not sufficient to establish equitable tolling. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Cousins has not established that he is entitled to equitable tolling.

For the reasons stated herein, the relief sought must be denied and the Petition shall be dismissed as untimely.

### IV.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" on a § 2254 petition. Because the accompanying Order is a final order adverse to the applicant, Cousins must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. §

2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner meets the standard with a showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Cousins's claims are dismissed on procedural grounds, and, upon review of the record, this Court finds that he has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Cousins may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

### V. Conclusion

For the foregoing reasons, the Petition will be DISMISSED as time-barred. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: August 18, 2022                        _____/s/_____
                                                                   RICHARD D. BENNETT
                                                                   UNITED STATES DISTRICT JUDGE